IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Arthur J. Anderson, Jr., ) | C/A No.: 1:10-996-RMG-SVH |
| Plaintiff, ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| Darlene Drew, in her individual and official capacities, ) | |
| Defendant. ) | |

Plaintiff Arthur J. Anderson, proceeding *pro se* and *in forma pauperis*, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). At the time, he filed this action, Plaintiff was an inmate at the Federal Correctional Institution (FCI) in Bennettsville, South Carolina, a facility of the Bureau of Prisons (BOP). Before the court is Defendant's Motion for summary judgment [Entry #59]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) and (e) (D.S.C.). Because the motion for summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

   A.  Procedural History

Plaintiff filed his complaint in this action on April 21, 2010, seeking monetary and injunctive relief with regard to Defendant's denial of his request to marry during his

incarceration. [Entry #1]. Defendant filed a motion to dismiss on September 2, 2010, based on Plaintiff's alleged failure to exhaust his administrative remedies.[1] [Entry #22]. The Honorable Richard M. Gergel denied Defendant's motion to dismiss on June 21, 2011 [Entry #35] and denied Defendant's motion to reconsider on July 26, 2011 [Entry #42]. Defendant filed a motion for summary judgment on November 21, 2011. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendant's motion [Entry #60]. Plaintiff filed a timely response in opposition to Defendant's motion on December 7, 2011 [Entry #63] and Defendant filed a reply on December 19, 2011. [Entry #64]. Having carefully considered the parties' submissions and the record in this case, the undersigned submits that Defendant's motion is now moot.

  B. Factual Backgound

Federal prison inmates may request permission to marry while incarcerated. *See* 28 C.F.R. § 551.10. The Warden shall approve an inmate's request to marry except where a legal restriction to the marriage exists, or where the proposed marriage presents a threat to the security or good order of the institution, or to the protection of the public. *Id*. When an

---

[1] Much of Defendant's motion for summary judgment again focuses on her argument that Plaintiff has failed to exhaust his administrative remedies. [Entry #59 at 5–15]. The undersigned does not address these arguments, as Judge Gergel previously ruled against Defendant on this ground, both in her motion to dismiss and upon reconsideration.

inmate makes a request to be married while incarcerated, a "Unit Team"[2] evaluates the request to determine whether (1) the inmate is legally eligible to marry, (2) the inmate is mentally competent, (3) the prospective spouse has verified an intention to marry the inmate, and (4) the proposed marriage poses a threat to institution security and good order or to the protection of the public. *See* 28 C.F.R. § 551.12 and § 551.13. The Unit Team prepares a report assessing these four factors and submits it to the Warden for a final decision. 28 C.F.R. § 551.13.

Here, Plaintiff requested permission to marry Gail Russell. He provided a copy of his divorce decree and Ms. Russell provided a letter stating her desire to marry Plaintiff, along with a copy of her former husband's death certificate. [Entry #59-2 at ¶ 4]. In accordance with federal regulations, the Unit Team evaluated Plaintiff's request and prepared a written report ("Report") for the Warden's consideration. [Entry #59-3].[3]

The Unit Team noted there appeared to be no legal impediment to the marriage. *See generally id*. However, the Report notes that Plaintiff is serving a 60-month term for selling fraudulent securities to older individuals and alleges that the scheme defrauded

---

[2] Although Defendant does not define "Unit Team," it appears from the court's in camera review of the Report that Plaintiff's Unit Team was composed of a prison camp administrator, chaplain, psychologist, captain, and associate warden.

[3] Plaintiff filed a FOIA request and was provided a redacted version of the Report. [*See* Entry #1-1]. Defendant asserts that Plaintiff was not entitled to an unredacted copy of the Report based on exemptions to FOIA found in 5 U.S.C. § 552(b)(5), (b)(6) and (b)(7)c and f. The undersigned makes no finding regarding the validity of all of the claimed exemptions as applied to the Report, as Plaintiff has not objected to the redaction, nor has he requested an unredacted version in discovery in this matter.

almost 2000 older victims of more than $70,000,000. *Id*. at 2. Information contained in the Report indicates Plaintiff continued his fraudulent activities while on pretrial supervision by attempting to sell unlicensed securities. *Id.* Defendant indicated to Plaintiff that she denied his marriage request because "concerns were noted with the nature of your offense, offense behavior, and pre-trial supervision." [Entry #1-2]. According to Defendant, she denied Plaintiff's request to marry while incarcerated because she shared the concern of various staff that Ms. Russell fit Plaintiff's victim profile (because she is a widow in her 60's) and that this request was another fraudulent scheme by Plaintiff. [Entry #59-2 at ¶ 6]. Defendant further swears that she did not consider the race of Plaintiff or Ms. Russell and has previously approved interracial marriages. [Entry #59-2 at ¶ 9].

In response to Defendant's assertion that Plaintiff may pose a threat to Ms. Russell due to his victim profile, Plaintiff has set forth evidence that Ms. Russell does not own a home and has no retirement accounts, investments, or savings. [Entry #63-4]. According to Plaintiff, Defendant treated his request to marry differently than other prisoners' requests because his relationship is interracial, and therefore violated his equal protection rights. [Entry #63 at 10]. Additionally, Plaintiff contends the decision violated his constitutional right to marry. *Id.* at 7.

II. Discussion

A. Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; " or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a

potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B. Analysis

Plaintiff is bringing suit against the warden of a federal prison. As such, his constitutional claims are evaluated under *Bivens*. *Bivens* is the case establishing, as a general proposition, that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Bolin v. Story*, 225 F.3d 1234, 1241–42 (11th Cir. 2000); *Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1310, n. 8 (M.D.Ala. 2001) ("the court shall refer interchangeably to cases" decided under both § 1983 and *Bivens*).

1. Injunctive Relief

   a. Plaintiff's Request For Injunctive Relief Is Now Moot

On May 14, 2012, the court received a notice of change of address from Plaintiff indicating that he has been transferred to Dismas Charities Community Corrections Center in Greensboro, North Carolina. [Entry #69]. Therefore, because Plaintiff is no longer in the custody of Defendant, it appears that Plaintiff's requests for injunctive and declaratory relief are now moot. "The doctrine [] of mootness . . . originate[s] in Article III's 'case' or 'controversy' language, no less than standing does." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 126 (2006). Because the requirement of a continuing case or controversy stems from the Constitution, it may not be ignored for convenience's sake. *See United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920) (stating that a moot question cannot be decided, "[h]owever convenient it might be"); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) ("[R]easonable caution is needed to be sure that mooted litigation is not pressed forward . . . solely in order to obtain reimbursement of sunk costs.").

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (per curiam) (stating that federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them"). "The requisite personal interest that must exist at the commencement of the litigation . . . must continue throughout its existence."

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997) (internal quotation marks omitted).

Here, Defendant has no authority to approve Plaintiff's marriage now that he is no longer in her custody. Additionally, Plaintiff has admitted in his motion to expedite that his request for injunctive relief would become moot upon his transfer. [Entry #67 at 2] ("Should this case not be resolved before [the date of transfer], it would then become moot . . . ."). Therefore, because Plaintiff has been released from Defendant's custody and there is no longer a "live" controversy as required by Article III of the Constitution, the undersigned submits that Plaintiff's requests for injunctive and declaratory relief are moot. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief.").

      b.    Constitutional Analysis (in the Alternative to Mootness Recommendation)

In the event that the district judge does not agree that Plaintiff's request for injunctive and declaratory relief were rendered moot by Plaintiff's transfer, the undersigned analyzes the facts as follows.

In 1987, the Supreme Court held found that, despite incarceration, inmates retained the constitutionally-protected right to marry. *Turner v. Safley*, 482 U.S. 78, 96 (1987) (a prison inmate "'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" (citations omitted)). The Court recognized, however, that an inmate's right to marry is, "like

many other rights, . . . . subject to substantial restrictions as a result of incarceration." *Id.* at 95. The BOP marriage policy generally permits inmates to marry, so long as there is no legal impediment to the marriage or no reason to deny it based on prison security, good order, or protection of the public. 28 C.F.R. § 551.10. In *Turner*, the BOP regulations were favorably described by the Supreme Court as an "obvious, easy alternative to the [] approach [at issue]." 482 U.S. at 98 (citing 28 CFR § 551.10).

In this case, Defendant attests that she denied Plaintiff's marriage request in the interest of public safety concerns, as Ms. Russell fits the profile for his prior securities fraud scheme. However, Defendant fails to explain how the marriage could affect anyone in the public save for Ms. Russell. Here, Ms. Russell was contacted and affirmed that she was aware of Plaintiff's conviction and nevertheless wanted to marry him. Additionally, in her affidavit attached to Plaintiff's brief in opposition to summary judgment, Ms. Russell indicates that she does not have any assets, such as a home, retirement accounts, investments, or savings. [Entry #63-4]. Additionally, she states that she has full mental capacities and is able to make her own decisions. *Id*.

Although it appears that the BOP's policy on marriage during incarceration is constitutional, it has not been applied to Plaintiff in a constitutional manner. Specifically, Defendant's denial of the marriage request based on the concern for the public is not valid here, as the only member of the public that may be affected by the marriage is Ms. Russell, who has confirmed her desire to marry Plaintiff after disclosure regarding the details of his conviction. Therefore, because Ms. Russell wishes to marry Plaintiff and there is no

9

indication that the marriage would affect any other member of the public, Defendant has unconstitutionally denied Plaintiff's request to marry.

2. Plaintiff is Not Entitled to Punitive Damages

Alhough Plaintiff's request for monetary relief in the form of punitive damages is not deemed moot based on his transfer, he has not shown that punitive damages are appropriate in this matter. The Supreme Court held in *Smith v. Wade*, 461 U.S. 30, 56 (1983), that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *See also Smith v. Pepersack*, 194 F.3d 1305, 1305 (4th Cir. 1999); *Cooper v. Dyke*, 814 F.2d 941, 948 & n. 5 (4th Cir. 1987). Here, Plaintiff has not shown that Defendant's denial of his request to marry was motivated by evil motive or intent. Pursuant to federal regulations, a Unit Team evaluated Plaintiff's request to marry. Some members of the Unit Team expressed concern over the marriage to a widow in her 60's, based on Plaintiff's underlying conviction for selling fraudulent securities to older individuals who were specifically targeted as victims based on their age. According to Defendant, the scheme defrauded almost 2000 older victims of more than $70,000,000 and Ms. Russell fits Plaintiff's victim profile. Therefore, Defendant avers that she believed that the marriage may pose a threat to the public. [Entry #59-2 at ¶¶ 5–7]. Even if Defendant is found to have ultimately violated Plaintiff's constitutional right to marry, Plaintiff has not set forth sufficient evidence for a reasonable juror to conclude that she did so with reckless or callous indifference.

There is similarly no indication that Defendant acted with reckless or callous indifference for Plaintiff's equal protection rights. Although Plaintiff claims that the denial of his request to marry violated his equal protection rights, he has not set forth evidence indicating that Defendant knew of Ms. Russell's race.[4] Additionally, Defendant has averred that she previously directed her Associate Warden to approve a request for another interracial couple to marry. [Entry #59-2]. Plaintiff has not set forth sufficient evidence for a reasonable juror to conclude that Defendant acted with reckless or callous disregard for Plaintiff's constitutional rights and the undersigned recommends Defendant be granted summary judgment with respect to Plaintiff's request for monetary relief in the form of punitive damages.

III.    Conclusion

For the foregoing reasons, it is recommended that this case be deemed moot to the extent Plaintiff requests injunctive and declaratory relief. In the alternative, if the district judge finds that the case is not moot and should be decided on substantive grounds, the undersigned recommends Defendant's motion for summary judgment be denied with regard to Plaintiff's claim for injunctive and declaratory relief, and that Plaintiff be allowed to

---

[4] Although Plaintiff points out that Ms. Russell is on his visitation list, which requires the applicant to state her race, there is no indication that this information was relayed to Defendant.

marry. Additionally, the undersigned recommends Defendant be granted summary judgment on Plaintiff's claim for punitive damages.[5]

    IT IS SO RECOMMENDED.

*[signature: Shiva V. Hodges]*

May 22, 2012                                           Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[5] Additionally, the undersigned notes that Plaintiff's motion to expedite proceedings in this case [Entry #67] will be rendered moot upon a ruling by the district judge.

12

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).